UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61102-CIV-COHN

ROBERT V. AMARAL and NANCI V. AMARAL,

Magistrate Judge Seltzer

Plaintiffs,

vs.

CROWN MORTGAGE GROUP and ASSOCIATES,

Defendant.

_____/

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**
**ORDER DENYING MOTION TO AMEND COMPLAINT**

_____THIS CAUSE is before the Court upon Defendant Crown Mortgage Group's

Motion for Summary Judgment [DE 50] and Plaintiffs' Motion to Amend [DE 42].   The

Court has carefully considered the motions, including Plaintiffs' opposition to the motion

for summary judgment [DE 54], Defendant's opposition to the motion to amend [DE 59],

Plaintiffs' reply in support of the motion to amend [DE 65], and is otherwise fully

advised in the premises.   No reply was filed in support of the motion for summary

judgment.

I. PROCEDURAL BACKGROUND

Plaintiffs filed this action against their mortgage broker and mortgage company

under various state and federal theories of liability all stemming from their allegations of

failure to disclose an improper payment from Defendant Countrywide (the lender) to

Defendant Crown (the mortgage broker).[1]  In particular, the claims against Crown are

_____

[1]  Defendant Countrywide Home Loans has been dismissed from this case
pursuant to a settlement with Plaintiffs.

for violations of the Real Estate Settlement Procedures Act ("RESPA") (Count II);

breach of fiduciary duty (Count IV), fraud by concealment (Count VI); common law

fraud (Count VII); violation of Florida's Deceptive and Unfair Trade Practices Act

(Count IX); and a recently added claim for violation of Florida Statute's Section

494.0019 (addition pending resolution of motion to amend).

Defendants separately moved for summary judgment on all claims.   After

briefing was completed, Plaintiff and Defendant Countrywide settled.  The Court now

proceeds to rule on Crown's motion for summary judgment and Plaintiffs' motion to

amend.

## II. FACTUAL BACKGROUND

Plaintiffs Nanci Amaral and Robert Amaral, mother and son, sought a mortgage

on a residential condominium to be lived in by Robert Amaral.  Plaintiffs, native

Brazilians whose primary language was Portugese, utilized the services of Crown

Mortgage Group and Associates, and their Portugese-speaking loan originator,

Geraldinho Assis (a/k/a Geraldinho Filho).[2]  Because of a recent foreclosure action

against Robert, Plaintiffs agreed with Mr. Assis to have the loan made in the name of

Nanci Amaral, believing they would qualify for a lower interest rate.

Robert Amaral testified in his deposition that he started the loan process with Mr.

Assis on the recommendation of his mother.  Nanci Amaral had used Mr. Assis at

Crown Mortgage before on prior purchases and trusted him.  Deposition of Nanci

---

[2]  This employee of Defendant's full name is Geraldinho Fortunato de Assis
Filho.  Deposition of Mr. Assis, p. 4 [DE 47-4].  Plaintiffs continually refer to him as Mr.
Assis, while Defendant refers to him as Mr. Filho.

Amaral at p. 9, 35, 42-43 [DE 47-2]; Deposition of Geraldinho Filho ("Assis") at p. 24 [DE 47-4].  All of their communications were in Portugese.  Assis at p. 23.  Robert met Mr. Assis in his office and filled out an application for a loan to purchase a condominium at 3830 Lyons Road.  Mr. Assis filled out the application based upon Robert's answers to the questions.  Deposition of Robert Amaral at 12 [DE 47-3].  Robert expected a rate of about six and three-quarters percent.  Id. at 15.  Mr. Assis told him he could get seven to seven and one-half percent based upon his credit score.  Id. at 16.

After hearing nothing for two months, Robert Amaral called Mr. Assis, who suggested to Robert that if the loan was made in his mother's name, they could obtain a better interest rate due to her superior credit.  Id. at 17-18; Deposition of Nanci Amaral at 16.  Assis used Mrs. Amaral's information from her prior loans to complete her application.  Id. at 17.[3]  Assis told her the interest rate would be around seven to seven and one-half percent.  Id. at 18; Robert Amaral deposition at 24.  Because she was leaving for a trip to Brazil, Mrs. Amaral executed a power of attorney on behalf of her daughter and did not attend the closing.  Deposition of Nanci Amaral at pp. 7-8, 48-49.  Her daughter did not review the documents prior to closing.  Id. at p. 9.  Robert handled the interactions with Assis from that point.  Id. at 18.  Nanci does not recall signing any other documents with respect to the purchase of the property.

Robert testified that he only spoke with Assis one more time once the decision

---

[3]  Assis apparently put down that the property was to be an investment property, resulting in a higher interest rate.

was made to put the loan under his mother's name.  That conversation was to learn the amount of cash due at closing, since Robert did not receive a HUD-1 Settlement statement until the day of closing.  Deposition of Robert Amaral at p. 21.  Though the amount of money due at closing was more than he anticipated, he got the check for the correct amount and attended the closing.  He proceeded with the closing because Mr. Assis told him 9.9% interest was the best rate he could get.  Id. at 30; 82.  At closing, Robert did not review any of the documents he signed, nor did his sister, acting in place of Nanci Amaral.  Id. at 32.  His mother's instructions were to trust Mr. Assis.  Id. at 26.  He expected Mr. Assis or someone from Crown to be at the closing, but they were not present.  Id. at 34, 48.

Robert did not move in to the property.  After the existing tenant moved out two months after closing (property was a condominium conversion), Robert made repairs to the unit because none had been done for five to six years.  Id. at 36-37.  By the time the repairs were done, he realized he could not afford the payments because of the higher interest rate.  The unit was rented out a month after that.  Id. at 37-38.  Nanci Amaral handled the leasing of the unit.  Id. at 39.

After she returned from Brazil and Robert gave her the closing packet, Nanci was shocked to learn from him that the interest rate was much higher than expected.  Deposition of Nanci Amaral at 38-39, 54-55.  She was not told prior to closing that if the purchase was for investment property that the interest rate would be higher.  Id. at 53.  She did not know she had the right to cancel the transaction.  Id. at 55.  Had she known that she could have paid more at closing to get a lower interest rate (the "par rate"), she

would have done so.[4]  Id. at 89; Deposition of Robert Amaral at 79.  The interest rates

Nanci Amaral had received on other purchases within the previous few months were

around seven to seven and one-half percent.  Id. at 83-84.  Mr. Assis testified that he

does not know if he informed her that she could pay two extra points up front in cash

and obtain the par rate, though it was his normal practice to explain all options to

clients.  Assis at 29, 34.   No complaints were made to Assis or Crown after closing

about the interest rate.   This action followed.

### III.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The movant "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To

discharge this burden, the movant must point out to the Court that there is an absence

of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production

shifts and the nonmoving party "must do more than simply show that there is some

---

[4] The "par rate" is the lowest interest rate a borrower qualified for without a yield spread premium.  Assis Deposition at p. 25.

metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## B.  RESPA

Defendant Crown has adopted Defendant Countrywide's argument that the RESPA claim fails because all charges were disclosed and the transaction was not covered by RESPA as it was an investment property for Nanci Amaral. RESPA does not cover extension of credit primarily for a business or commercial purpose. 24 C.F.R. § 3500.5(2) (referring to 12 C.F.R. § 226.3(a)(1), Regulation Z of the Truth in Lending Act, for definition). Plaintiffs argue that their intention was for Robert Amaral to live in the property, and that it was Crown's employee, Mr. Assis, who filled out the loan

application for Nancy Amaral indicating the loan was for investment purposes.

However, because the property was in fact rented out to others both at the time of

purchase and a few months after the purchase, and never lived in by Nanci or Robert

Amaral, the Court concludes that there are no genuine issues of material fact that the

credit extension to Nanci Amaral for this property in fact was for business or

commercial purposes.  Therefore, summary judgment in favor of Crown is appropriate

on Count II.[5]

### C.  Breach of Fiduciary Duty

Plaintiffs allege that Crown via Assis breached a fiduciary duty by not informing

them of the par rate and forcing them to take the loan at the higher interest rate.  The

elements of such a claim are "the existence of a fiduciary duty, and the breach of that

duty such that it is the proximate cause of the plaintiff's damages."  Gracey v. Eaker,

837 So.2d 348, 353 (Fla. 2002).  A duty exists "If a relation of trust and confidence

exists between the parties (that is to say, where confidence is reposed by one party

and a trust accepted by the other, or where confidence has been acquired and

abused), that is sufficient as a predicate for relief.  Gracey, 837 So.2d at 352, citing

Quinn v. Phipps, 113 So. 419, 421 (Fla. 1927).

Crown asserts that no fiduciary duty existed because all charges were listed on

the HUD-1 Settlement Form that was accepted at closing.  Plaintiffs assert that

because Nancy Amaral relied upon Mr. Assis of Crown to explain everything to her

---

[5]  This Court does not reach the issue of whether the yield spread in this case violates RESPA or not.

orally in Portugese as she had during their prior business relationship, that a duty did exist.  Nanci did testify that she trusted Assis and was willing to give her daughter power of attorney to close while Nanci traveled back to Brazil.  Assis testified that he knew of this trust.  Assis Deposition at p. 24 [DE 47-4].  Although the interest rate and the yield spread was disclosed on the HUD-1 form, Plaintiff Nanci Amaral sufficiently alleges that the availability of a lower rate was never explained to her, to her detriment and to the benefit of Crown by its receipt of the yield spread from Countrywide.[6]

As to Robert Amaral, he was not in the same position as his mother, Nanci Amaral.  Robert was not the loan applicant, he was not financially liable for the mortgage, nor did he have a prior business relationship with Mr. Assis.  He speaks fluent English and was at the closing himself.  For these reasons, the Court concludes that Defendants have shown that there is no genuine issue of material fact that Robert Amaral did not have a fiduciary relationship with Mr. Assis.  However, the Court also concludes that there is at least a question of disputed fact that such a relationship did exists between Nanci Amaral and Mr. Assis for this transaction, resulting in her being liable for higher interest payments as a result of Mr. Assis' breach of that duty in not disclosing the existence of closing at a lower interest rate.[7]

---

[6]  The Court need not consider the additional allegations in ¶ 61 of the proposed amended complaint to reach its conclusions as to Count IV.  There is record evidence to support those allegations despite the Court's denial of the motion to amend.

[7]  This conclusion is of course limited to the decision to deny summary judgment. A trier of fact could conclude that Nanci Amaral bears the fault of causing any damages through her unreasonable reliance on Assis given her absence during closing.

## D.  Fraud by Concealment

Plaintiffs' assert in Count VI that Assis and Crown committed fraud by concealing the existence of the yield spread premium.   A claim for fraud by concealment exists "only when a duty to make such disclosure exists.  This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties.  Where a party in an arm's-length transaction undertakes to disclose information, all material facts must be disclosed." Friedman v. American Guardian Warranty Services, Inc., 837 So.2d 1165, 1166 (Fla.Dist.Ct.App. 2003) (internal citations to State v. Mark Marks, P.A., 698 So.2d 533, 539 (Fla. 1997) and Gutter v. Wunker, 631 So.2d 1117, 1118-19 (Fla.Dist.Ct.App. 1994) omitted).

As discussed in the prior section, there is at least a genuine issue of material fact that Mr. Assis owed Nanci Amaral a duty to disclose the information regarding the amount of the yield spread and availability of a lower interest rate.  The duty does not exist with regard to Robert Amaral, as he was not a party to the loan transaction, despite his stated intent to live at the property.  He was not named in the mortgage documents, though his name was placed on the property title.  The Court concludes that summary judgment as to Robert's claim in Count VI is appropriate, but not as to Nanci's claim.

## E.  Common Law Fraud

Plaintiffs allege in Count VII of their Complaint that Crown engaged in misrepresentations regarding the lowest interest rate available for this loan.  They

9

assert that Crown engaged in "bait and switch" tactics by enticing their business with promises of a low interest rate before unveiling a 9.9% rate at closing.  The elements of a claim for common law fraud are: "(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person."  Gandy v. Trans World Computer Technology Group, 787 So.2d 116, 118 (Fla.Dist.Ct.App. 2001).

Although its not in the "fraud" part of their brief, Defendant Crown appears to argue that because Plaintiffs had an opportunity to walk away from the closing, the proximate cause of their damages was not the conduct of Assis or Crown Mortgage. However, on a summary judgment motion, the Court must resolve all disputed facts in the non-movant's favor.  Under this review, the record reveals that Assis told Robert and Nanci Amaral prior to closing that they could expect an interest rate below 8%. However, on the day of closing, Robert was informed upon calling Assis that in fact the best interest rate Assis could obtain was 9.9%.  This was arguably a false statement of fact, as Assis knew that the "par rate" for this loan was 7.3% if the yield spread premium was paid at closing.  The statement was made to induce Robert to accept that higher interest rate and complete the closing.  Robert relied upon this statement by Assis in completing the closing.   While he legally had the right to stop the closing, there is at least a factual dispute that he reasonably relied upon Assis' statement that this was in fact the best rate.  Thus, the transaction was completed and Plaintiffs

10

sustained damages by not being given the opportunity to obtain the par rate.

For this claim of fraud, the Court concludes that both Nanci Amaral and Robert Amaral have standing to pursue the claim.  Though Robert was not legally obligated on the mortgage, he arguably sustained damage because his arrangement with Nanci was for Robert to be the sole payor of the monthly payment.  Therefore, the motion for summary judgment as to Count VII is denied.

### F.  Florida Deceptive and Unfair Trade Practices Act

Plaintiffs assert that the Defendants' scheme of splitting the broker fees and having Countrywide kickback the yield spread to Crown, as well as Crown's breach of fiduciary duty and fraud, are violations of FDUTPA.  A claim under FDUTPA has three elements "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla.Dist.Ct.App. 2006).  Crown's sole argument in support of its motion as to this claim is that Plaintiffs cannot show causation of damages because Plaintiffs could have canceled the loan at closing or requested further explanation from the title agent.  However, under the record in this case, Plaintiffs could have reasonably relied on the misrepresentation by Assis that 9.9% was in fact the "best rate" they could obtain.  Unlike a defense to a RESPA or TILA claim, for the breach of fiduciary duty and fraud claim, and therefore by extension the FDUTPA claim, the failure to cancel does not automatically lead to summary judgment for a defendant.  These state law claims allow a plaintiff to argue beyond the written instruments that they reasonably relied on the statements of Assis to their detriment.

11

The Court therefore concludes that Crown's motion for summary judgment as to the FDUTPA claim is denied.

### G.  Motion to Amend

On February 21, 2008, Plaintiffs moved to amend the Complaint to add certain additional allegations learned through discovery and to add a claim against Crown for violation of Florida Statutes §§ 494.0019 and 494.0025(5).  Defendant Crown argues in opposition to the motion that the deadline for such amendments passed back on October 24, 2007, that Plaintiffs waited until the summary judgment motion deadline to file the motion to amend, and that it would be prejudiced by the late amendment. Plaintiffs argue that the additional claim in ¶¶ 108 to 110 of the First Amended Complaint will not involve any additional discovery as the assertion of concealing the yield spread, falsely stating the best rate was 9.9% and submitting documents with forged signatures were already discussed during the depositions.

Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires."  In construing Rule 15(a), the Supreme Court has held that

> In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).   However, when a scheduling order has set

a deadline in a particular case, a party must show "good cause" to file a late

amendment.  In this case, the motion was filed after discovery had been completed.

The fact discovery deadline was December 14, 2007, however, the parties apparently

agreed to continue fact discovery through the expert discovery cutoff of February 8,

2008, as the Assis deposition was held on January 31, 2008.  Plaintiffs argue that it

was not until this deposition that they learned of the "forgery" of the signatures on the

loan application and other forms.  Defendants argue that the documents at issue were

available for inspection as of November of 2007 and delivered to Plaintiffs in

December.

The Court concludes that the motion to amend should be denied for failure to

show good cause and for undue delay.  The documents in question were available in

November of 2007.  Plaintiffs could have at least discovered then that his client's

signature was "forged."[8]  In addition, the other theories of liability under this amended

statutory claim mirror the common law claims that are going forward (though Plaintiffs

would not have to show a fiduciary duty).  The point is that Plaintiffs could have brought

these claims prior to the amendment deadline.  Carruthers v. BSA Advertising, Inc., 357

F.3d 1213, 1218 (11th Cir. 2004) (motion filed six months after the court's deadline for

amendments to the pleadings and two months after deadline for completion of

_____

[8] The Court notes that upon reviewing the three depositions submitted in this
case, the fact that the loan documents were signed by someone other than Mr. Assis
and Nanci Amaral does not mean the documents were "forged."  A more likely scenario
is that someone at Crown superior to Mr. Assis added his name with his implicit
permission, as Mr. Assis added Nanci Amaral's name to the application with her implicit
approval.  However, this more likely scenario does not reach the level of "futility" when
deciding whether to deny the motion to amend.

discovery); <u>Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida</u>, 342 F.3d 1281, 1285, 1287 (11th Cir. 2003) (amending complaint on the last day of the already extended discovery period – set 18 months after case filed was undue delay); <u>Lowe's Home Centers, Inc. v. Olin Corp.</u>, 313 F.3d 1307, 1314-15 (11th Cir. 2002) (it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions).

While the delay in this case is not as egregious as in any of the above cited cases, Plaintiffs still could have brought this statutory claim before the deadline but failed to do so.  To allow the amendment at this time would prejudice Crown in not having the ability to further develop the statutory defense in § 494.0019(2) regarding good faith and lack of knowledge.  Therefore, the motion to amend is denied.

## IV.  CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1.     Defendant Crown Mortgage Group's Motion for Summary Judgment [DE 50] is hereby **GRANTED in part** as to Counts II (both defendants) and Counts IV and VI as to Robert Amaral, and **DENIED** as to Counts IV and VI as to Nanci Amaral, Count VII and Count IX;

2.     Plaintiffs' Motion to Amend [DE 42] is hereby **DENIED**;

3.     This case remains on for trial during the two-week period commencing May 19, 2008, with the pretrial conference to be held at the scheduled Calendar Call on May 15, 2008.  **Counsel is forewarned that this case is likely to be reached**

14

**during the two week period**.

4.      Motions in limine were due on May 1, 2008, but none were filed.  If good cause

is shown for a late filing, such motions must be filed by noon, Tuesday, May 6,

2008.  Those motions will be heard at Calendar Call.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 5th of May, 2008.

JAMES I. COHN
United States District Judge

Copies furnished to:

Malcolm Harrison, Esq.

Il Young Choi, Esq.

Heui Young Choi, Esq.